UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

Charles R. Williams II Plaintiff(s)  )
 )
 )
vs.  )
 )
Onondaga County et al Defendant(s)  )
 )
 )

Civil Case No.: 5:22-cv-1367 (TJM/ATB)

**CIVIL
RIGHTS
COMPLAINT
PURSUANT TO
42 U.S.C. § 1983**

Plaintiff(s) demand(s) a trial by:  _X_ JURY  _____ COURT  (Select **only** one).

Plaintiff(s) in the above-captioned action, allege(s) as follows:

## JURISDICTION

1.  This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4) and 2201.

## PARTIES

2.  Plaintiff:  Charles R. Williams II

    Address:  555 S. State Street

    Syracuse, New York 13202

Additional Plaintiffs may be added on a separate sheet of paper.

3.  a.  Defendant:  County of Onondaga

    Official Position:  County Attorney

    Address:  421 Montgomery St.

    Syracuse, New York 13202

b.   Defendant:   _City of Syracuse_

Official Position:   _City Attorney_

Address:   _____

_____

_Syracuse, N.Y. 13202_

c.   Defendant:   _Onondaga Co. D.A.'s Office_

Official Position:   _District Attorney's Office_

Address:   _505 South State Street_

_Syracuse, New York 13202_

Additional Defendants may be added on a separate sheet of paper.

4.                                    **FACTS**

Set forth the facts of your case which substantiate your claim of violation of your civil and/or Constitutional rights.  List the events in the order they happened, naming defendants involved, dates and places.

**Note: You must include allegations of wrongful conduct as to EACH and EVERY defendant in your complaint.**  (You may use additional sheets as necessary).

_please see attached complaint._

_____

_____

_____

_____

_____

_____

_____

d. Defendant: Syracuse Police Department

Official Position: Police of City

Address: 511 S. State St, Syracuse, NY 13202


e. Defendant: Hon. Stephen J. Dougherty

Official Position: Onondaga County Court Judge

Address: 505 S. State St, Syracuse, NY 13202


f. Defendant: Hon. Rory A. McMahon

Official Position: Onondaga County Court Judge

Address: 505 S. State St, Syracuse, NY 13202


g. Defendant: Michael Whalen

Official Position: Assistant District Attorney

Address: 505 S. State St, Syracuse, NY 13202


h. Defendant: Jarrett A. Woodfork

Official Position: Assistant District Attorney

Address: 505 S. State St, Syracuse, NY 13202


i. Defendant: Anthony V. Mangovski

Official Position: Assistant District Attorney

Address: 505 S. State St, Syracuse, NY 13202


j. Defendant: Alphonse Williams lll

Official Position: Assistant District Attorney

Address: 505 S. State St, Syracuse, NY 13202

k. Defendant: Walter B. Coffin, esq.

Official Position: Attorney

Address: 3383 Hitchings Rd, Syracuse, NY 13120

l. Defendant: Dallas Pelz

Official Position: Police Officer

Address: 511 S. State St, Syracuse, NY 13202

m. Defendant: Arthur Stripling

Official Position: Complainant / Witness

Address: 310 Robinson St, Syracuse, NY 13203

n. Defendant: Tonya Burton

Official Position: Witness

Address: (D.A. Office has her address)

o. Defendant: Tammy McNeilly

Official Position: Employer / Witness

Address; 300 Boyden St, Syracuse, NY 13206

p. Defendant: Shasha Thornton

. Official Position: Witness

Address: (D.A. Office has her address)

q. Defendant: Onondaga County Justice Center

Official Position: County Holding Facility

Address: 555 S. State St, Syracuse, NY 13202

r. Defendant: Esteban B. Gonzalez

Official Position: Chief Jail Deputy

Address: 555 S. State St, Syracuse, NY 13202


s. Defendant: Corey Moore

Official Position: Lt. Deputy

Address: 555 S. State St, Syracuse, NY 13202


t. Defendant: Daniel Lavy

Official Position: Lt. Deputy

Address: 555 S. State St, Syracuse, NY 13202


u. Defendant: James Schmunk

Official Position: Deputy

Address: 555 S. State St, Syracuse, NY 13202


v. Defendant: Napcare Providers

Official Position: Inmate Providers

Address: 555 S. State St, Syracuse, NY 13202


w. Defendant: Erin (LPN) Napcare Providers

Official Position: Inmate Providers

Address: 555 S State St, Syracuse, NY 13202

5.                                    **CAUSES OF ACTION**

Note: You must clearly state each cause of action you assert in this lawsuit.

### FIRST CAUSE OF ACTION

My face was plastered all on the news for rape 1st, and shooting (2) men at my place of employment. Both of these crimes I did not commit, however, I was arrest without a signed affidavit.

### SECOND CAUSE OF ACTION

I was subject to cruel and unusual punishment while incarcerated. People lied in the grand jury. The prosecutor's office erased video evidence that showed me being held at gun point and attacked. Lost Everything I owned.

### THIRD CAUSE OF ACTION

Many people lying on the stand at my trial, and false evidence was presented to the jury. The presiding judge violated the plaintiff's Rights on more than 10 occasions. A verdict being forced on jury to reach and a verdict that was impossible to reach with evidence that had been presented to jury. I did not receive a Fair and Speedy Trial and the presiding judge was never Fair or Impartial but he instead acted like a prosecutor. Also I am the victim of a malious prosecution and wrongful conviction.

6.    **PRAYER FOR RELIEF**

   **WHEREFORE**, plaintiff(s) request(s) that this Court grant the following relief:

Plaintiff is seeking monetary damages, a trial by jury, expungement of these charges off of his record, conviction be immediately vacated, and name to be cleared on the news. Release pending civil trial and forced conviction until appeal.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: _October 19, 2022_

_Charles R. Williams II_
_____
Signature of Plaintiff(s)
(all Plaintiffs must sign)

02/2010

```
***************************************************************************
```

Charles R. Williams ll

**v.**

| | |
|---|---|
| County of Onondaga | City of Syracuse |
| Onondaga County D.A.'s Office | Syracuse Police Department |
| Onondaga County Justice Center | Hon. Stephen J. Dougherty |
| Hon. Rory A. McMahon | A.D.A. Michael Whalen |
| A.D.A. Jarrett A. Woodfork | A.D.A. Anthony V. Mangovski |
| A.D.A. Alphonse Williams | Det. Dallas Pelz |
| Deputy Esteban B. Gonzalez | Deputy Corey Moore |
| Deputy Daniel Lavy | Deputy James Schmunk |
| Arthur Stripling | Donnell Thornton |
| Tammy McNeilly | Sha Sha Thornton |
| Walter B. Coffin | Tonya Burton |
| Napcare Medical | Erin (LPN) Napcare |

## COMPLAINT

Civil Case No:

```
***************************************************************************
```

Charles R. Williams ll, being duly sworn, deposes and says: deponent is the plaintiff in the above encaptioned proceeding, that he has read the foregoing complaint and know the contents thereof, that the same is true to deponent's own knowledge, except to matters therein stated upon information and belief, which matters deponent believes to be true.

1. On November 4, 2019, at 300 Robinson St, Syracuse, NY 13203, there was an incident where a man, Donnell Thornton, pulled out a gun and escorted me out of McNeilly's Pub, where I worked for (3) years as security. As he backed me out of the pub at gunpoint and my hands are clearly held up in the air to let them know, I had no weapons and not to shoot me. This was all captured on the establishment's security cameras. As we got to the corner, Arthur Stripling, one of the assailants tried to cut me with a knife to my face. He dropped the knife when I jumped back and a gun fell from his person and slid toward me. This is when Donnell Thornton, the other assailant, fired (2) shots, point blank range at me. I ran and jumped in between (2) cars. A short time later Donnell Thornton is seen, on security footage, in front of the pub, pointing a black gun in the direction I am located off camera. This is supported by an official statement given by Syracuse Police Officer Dallas Pelz after reviewing the surveillance video. (His statement will be submitted along with other corroborating evidence.) Once Arthur Stripling arrived at the hospital and his belongings were confiscated, he was found to be in possession of brass knuckles, a black firearm holster and other miscellaneous items according to Syracuse police Officer Kimberly Dipshaw. I mean if they were going to charge me, then why not charge them also, after finding and seeing them both with weapons? I possessed no weapon at all but to take one man's word in a pub full of people?! A man that possessed numerous weapons and was the aggressor? This is their star witness? Why were they not charged? These weapons were recovered.

2. On or about Thursday, November 21, 2019, the Syracuse Police Department defamed the character of plaintiff by broadcasting his face on the news for crimes he did not commit, endangering his life and the lives of his family members.

3. On November 25, 2019, on Avery Avenue, Syracuse, Syracuse Police Officers forcibly entered plaintiff's residence without a no knock warrant to do so, arrested plaintiff, never reading his Miranda Rights and failing to inform him as to why he was being arrested or detained.

4. On November 26, 2019, at Syracuse City Court, Onondaga County Assistant District Attorney Michael Whalen violated plaintiff's Due Process of Law and 6th Amendment Rights to the U.S. Constitution during the arraignment by failing to inform him of his accuser. The Onondaga County District Attorney's Officer used a Selective Prosecution in charging plaintiff but failing to charge the accuser and son who were in possession of multiple weapons and firearms on camera.

5. On November 27, 2019, at Syracuse City Court, I was arraigned by Judge Limpert and during this arraignment I requested that I be allowed to testify at the Grand Jury on my own behalf. At this time A.D.A. Michael Whalen walked over and handed me a paper stating that we were going to the Grand Jury the next day and Judge Limpert stated in

1

open court that he was setting my preliminary hearing for the 28th of November but if the Grand Jury was being held tomorrow (November 26, 2019), then my preliminary hearing would have to be held on the same date. I stated to the Judge 5X's that I would like to be present and was not waiving anything. Judge Limpert warned ADA Whalen that he was moving fast and if he did not indict me by 12 PM the next day, I would have to be released. The next day I had my family bring evidence for the jurors to view on my behalf. I also wanted the surveillance video brought over from the scene of the alleged shooting that shows my hands in the air with a gun pointed to my stomach. However, this did not happen as my preliminary and grand jury hearings were postponed until December 11, 2019. By law, I should have had a preliminary hearing within (144) hours and this did not happen!

6. On November 26, 2019, at Syracuse City Court, Judge Theodore Limpert set an excessive bail after being asked to do so by Onondaga County District Attorney's Office, which violated plaintiff's 8th Amendment Rights guaranteed to him by the United States Constitution and bail is still excessive (45) days after the New York State Bail Reform Act went into effect, being used to "hold" plaintiff in custody.

7. On November 27, 2019, at the Onondaga County Justice Center, Walter B. Coffin was originally assigned to my case and he came right up to see me. Mr. Coffin did not agree with my wishes to attend the Grand Jury hearing which resulted in a shouting match with a standing face-to-face because I was adamant about testifying at the Grand Jury hearing the next day. He told me that he could not be my lawyer if I was going to go in the Grand Jury and I said fine, I would be given another lawyer that was on my side.

8. On November 27, 2019, at Syracuse City Court, Attorney Walter B. Coffin violated plaintiff's Due Process of Law and Civil Rights by a postponement of plaintiff's preliminary hearing and waiver of defendant's right to testify at the Grand Jury on his own behalf. Attorney Coffin was fired a day prior to this, after plaintiff's arraignment.

9. On November 28, 2019, A.D.A. Michael Whelan never held the Grand Jury or preliminary hearing but instead postponed them both until December 11, 2019. This was not illegal but I should have been 180.80 or ROR'd at this time. Attorney, Walter B. Coffin, did not call me down or come up to see me and tell me what happened; however, he was there on my unit within (2) hours to tell me not to go to the Grand Jury and he failed to file the motion to get me out because they were not ready to proceed. I never told him to waive anything but it gets deeper.

10. On December 11, 2019, at Syracuse City Court, Attorney Walter B. Coffin waived plaintiff's preliminary hearing while he was not even his attorney, again, without even

consulting with plaintiff but did so to aid the prosecution, who was not ready to move forward with the hearing.

11. I was called out to court on December 11, 2019 to Onondaga County Court, and I have evidence in a folder, looking presentable and ready to save my own life because they were not going to tell the Grand Jurors everything. Now when I get over there, it is not the Grand Jury, it is a preliminary hearing (16) days later, mind you, I never waived anything! Mr. Coffin never even appeared in court, or at least that was what I was told by the court deputy but Mr. Coffin waived a prelim to the Grand Jury without even talking to me?!

12. I have only met with Mr. Coffin (1) time, at the Onondaga County Court, and that was to talk me out of going to the Grand Jury. Permission to speak freely? I feel and know upon information and believe that Mr. Coffin is on the take and working for the Onondaga County District Attorney's Office. He is given all of the high-profile cases where the defendants may or may not be guilty and his job is to get them to plead guilty and waive certain rights and in return, he is assigned the most (high-profile) cases and I can prove it! Let me proceed.

13. I should have been released when they did not hold my first prelim/grand jury or the 2nd scheduled prelim/grand jury. What happened to my Due Process of Law and Equal Protections under the Law? I had a right to confront my accusers and have them cross examined. Instead, he waved this after he was let go as my attorney and had not been back to see me or let me know anything.

14. On or about November 29, 2019, a complainant called Walter B. Coffin at his office and told him I did not sexually assault her. He said it is unethical for him to talk to her but says she can give a new statement to his private investigator and they ended the call. You know what Mr. Coffin does? He calls A.D.A. Woodfork and tells him that the girl called him and she's stating the assault never happened and wants to give a new statement to my investigator. This is something he can and should be disbarred for. He never gave the P.I. her number to call and get a statement which would exonerate me. Instead, he gives the prosecution a heads up. He is selling people/defendants out.

15. On or about November 29, 2019, Mr. Woodfork then calls the complainant and she tells him that she yes, she did call Mr. Coffin and she wants to drop the charges and the order of protection so she can come and visit me and we can talk. Instead of considering this, he tells her there anything you need to say to Charles, tell me and I will relay the message to his lawyer. This is all wrong and against the law! Complainant has stated to ADA Woodfork on at least (4) occasions that she does not want to pursue the charges, let alone go into the Grand Jury when she is trying to recant her statement? Force her to

3

commit perjury? As an officer of the court, you have an obligation to report this or at least reconsider the charges but to keep moving forward is unethical and was prejudicial to the plaintive.

16. At McNeilly's Pub, 300 Robinson St., in the alleged shooting case there is video surveillance and I have provided evidence that I was an employee at this pub doing security (3) days a week on Thursdays, Fridays and Saturdays. I gave them printouts of text exchanges with the owner, Tammy McNeilly, informing me what my pay would be, asking me to remove patrons from the bar and asking me to have patrons remove their hoodies or tell patrons with bottles of liquor to move from out in front of the bar. In my possession I have security shirts that I was required to wear to work, as I was really an employee of the pub. Mr. Walter B. Coffin has destroyed all of this evidence or purposely misplaced it.

17. On or about December 2019 or January 2020, A.D.A. Mangovski had the security recording and you can see my hands in the air and I worked there, had every right to be there. Now all of the sudden the recording has been erased. I had to mention the pub incident again because it bothers me deeply. You can pull guns out on Me and you are now the prosecution's star witness? I will not take this sitting down, I am innocent. Please, Your Honor, request to see the tape and they cannot say no to you. CCTV does not lie. Before the tape was erased, police officer Dallas Pelz gave a sworn statement and he saw what I described before Mangovski erased the tape.

18. If there are equal protection under the laws, why are the (2) convicted felons still free? After holding a gun to me, pulling out a knife and gun, still free on the land? They found the knife with the alleged victim's DNA on it. Why are these men not in jail A.D.A. Mangovski? You were not fair or acting as an officer of the court but instead act like you have it out for me personally, A.D.A. Mangovski you have viewed the video. It completely exonerated me as a shooter but instead shows me being victimized and almost killed at point blank range! I am telling the whole truth and nothing but it.

19. In the month of January, 2020, Assistant District Attorney Anthony V. Mangovski broke the law by tampering with evidence when he erased the video from a crime scene and Mr. Mangovski has failed to turn over discovery that may be in favor to plaintiff, after several requests.

20. A.D.A. Mankowski deleted the DVD at the Onondaga County District Attorney's office, where the alleged victims have a gun on me and are seen pointing a gun after alleged incident. This was erased and jurors did not see this before they voted or told his star witness possessed a gun holster & brass knuckles once he was taken to the hospital. They knew none of this.

4

21. On January 3, 2020, at the District Attorney's Office, Assistant District Attorney Jarret A. Woodfork met with complainant in plaintiff's pending case. Complainant informed A.D.A. Woodfork that complainant was not comfortable moving forward with the charges, as they were not true. A.D.A. Woodfork lied to complainant and stated he would not pursue certain charges against plaintiff. As soon as complainant left, Mr. Woodfork wrote a letter to plaintiff's attorney about meeting with complainant and their wishes. Mr. Woodfork stated he would still pursue all charges, including rape, committing prosecutorial misconduct.

22. On Friday, January 3, 2020, at the Onondaga County District Attorney's Office, Assistant District Attorney, Jared A. Woodfork met with complainant. During this meeting that took place for (2) hours he tried to force her into lying to the Grand Jury. After they argued for hours and he stated he would not pursue the sexual assault charges because it simply did not happen. After reaching an agreement with her on the charges they would pursue, he writes my attorney a letter and states otherwise. That letter will be filed with this complaint and all other papers and exhibits. Mr. Woodfork lied and told complainant he would not go forward with the rape or burglary. They argued for hours on this and when he saw she would not go into the Grand Jury and say this, he finally told her we would not. Then sends a letter to the defense stating he is going to go forward still but kept this from her. Attorney Lance Cimino gave her a copy of this letter the day before the Grand Jury and she and A.D.A. Woodfork had it out again. Then he chose not to pursue the rape and burglary charges after she said she would not go in to the Grand Jury and lie. So, he went forth with the Assault 2nd. Thank you, brother, for lying and this is not over by far. A.D.A. Woodfork and the Syracuse Police knew no rape had occurred before they put me on the news like that or before they charged me due to speaking with complainant and our texts, pictures & get togethers prior to plaintiff's arrest but did so to get people to hate me and cooperate on my whereabouts. Defamation of character and prosecutorial misconduct.

23. On January 7, 2020, ADA Woodfork held a Grand Jury at the Onondaga County District Attorney's office and prior to complainant testifying he never informed complainant of his intentions to pursue charges he said he would drop. It was not until complainant gave him a copy of his own letter to plaintiff's lawyer and there was a heated argument regarding him agreeing to not go forward with charges that he said he would not. A.D.A. Woodfork violated plaintiff's 6th and 14th Amendment Right to Due Process and Equal Protection under our Laws.

24. On December 23, 2019, at Onondaga County Court, Judge Stephen J. Douherty violated plaintiff's Constitutional Right to Due Process of Law by not addressing plaintiff's motion/letter to the court, conducting hearing off of the record and defending attorney

Walter B. Coffin's illegal actions in his ineffective assistance of counsel. Walter B. Coffin has also destroyed evidence turned over to him by plaintiff's family.

25. On January 15, 2020, 2nd bail hearing in Onondaga County Court, Judge Stephen J. Dougherty again failed to address plaintiff's bail hearing and sided with the prosecution, ignoring the bail and it was the only reason for the court hearing.

26. On January 24, 2020, at plaintiff's 3rd bail hearing at the Onondaga County Courthouse, Judge Stephen J. Dougherty used this hearing to see if A.D.A. Mangovski had reached an indictment and he stated he needed more time in violation of my Due Process of Law. Judge Dougherty gave him more time, again never addressing the reason (bail) why we were there. Judge Dougherty put the bail hearing off again for (10) more days. I am (41) years old and a highschooler could see that the Judge was acting as an assistant district attorney and granting delay after delay. That violated C.P.L.190 statue and in doing so, Judge Stephen J. Dougherty violated all of my rights and ignored procedural safeguards.

27. On December 23, 2020, at the Onondaga County Courthouse, while in front of Stephen J. Dougherty to fire Walter B. Coffin for numerous violations and working with the A.D.A.'s in the case, Mr. Coffin had to explain why he waived and postponed preliminary hearings without even speaking to me. Mr. Coffin knew he messed up and could not even speak without stuttering. At times when he was at a loss for words, Judge Dougherty would fill in sentences to help him through and even went as far as to say; you waived his prelims and Grand Jury because there is case law that says you can. He was helping Walter B. Coffin but hurting himself as a Judge who is supposed to act as a referee, not a player and was on everyone's side but mine at every court appearance. The one thing I respect that Walter B. Coffin did do on his way off of my case, he asked Judge Stephen J. Dougherty to assign plaintiff an attorney named Graham Spicer while we were in court. Graham Spicer had recently won a couple murder trials. You know what Judge Dougherty says? "I am not going to do that!" (is what I heard while they were at the bench). If Judge Stephen J. Dougherty was fair and impartial, why would he care what lawyer I was given or assigned? He has been against me during every proceeding, (5) total and has never acted as a referee but as an assistant district attorney every court appearance, like he formally was an assistant district attorney.

28. On January 10, 2020, at the Onondaga County Courthouse, Judge Stephen J. Dougherty violated plaintiff's Due Process of Law and the New York State Bail Reform Law. We were scheduled for a bail hearing and the whole topic was about whether or not I was indicted and he gave prosecutors a (16) day extension that went well past the (45) days that the 190.80 allows. There was no case law or penal law presented to Judge Dougherty, he just agreed with whatever A.D.A. Mangovski stated without even responding to our motion. Judge Dougherty was supposed to set me a bail, actually (3)

6

kinds of bail. A cash bail, an insurance bail bond and an unsecure bail in accordance with the New York State Bail Reform Law. Judge Dougherty did not even address bail but stated he would at the next court hearing, giving them more time to try and reach an indictment. This same Judge Dougherty had been in the news bashing the New York State Bail Reform Law and stated he will do whatever he wanted in his courtroom.

29. On January 15, 2020, at the Onondaga County Courthouse, at the 2nd bail hearing Judge Stephen J. Dougherty again did not address plaintiff's bail status but instead asked A.D.A. Mangovski if he reached an indictment or had a response to the plaintiff's motion. We were not even there for that issue. Again, bail was not set and this violated the 14th Amendment to the U.S. Constitution and my Civil Rights to have a fair impartial Judge presiding over my case. He kept asking both A.D.A.s did they reach an indictment when I was not in court for this matter, only a bail hearing.

30. A.D.A. Mangovski came to court at the Onondaga County Court House with no response in writing and is going to state CPL 190. Did not give us a subdivision to cross reference but Judge Dougherty is going to say I agree and grant the extension for (15) more days? The law clearly states that a defendant has the right to a fair and prompt hearing within (144) hours or less. I never waived any hearing but am on record stating I wish to be present at the Grand Jury and preliminary hearing scheduled for the next day. As far as I'm concerned, assigned attorney Walter B. Coffin removed himself the day of my arraignment after we engaged in a shouting match on whether I would appear in front of the Grand Jury! He had no legal right to waive anything. It does not bother you at all that I only seen him 1x and after this he waived and postponed my grand jury and preliminary hearing but was supposed to be off my case?

31. On January 15th 2020, at the Onondaga County Courthouse, Judge Dougherty heard plaintiff's motions. In another case, attorney Kenneth Christopher's client's motion was granted with no issues. He did not give their prosecutor time to respond. On Friday, January 10, my motion 190.80 was not granted but instead he gave the prosecution time to respond? Why not do this for all cases? Then Wednesday we were on for the bail hearing, the prosecutor still did not reach an indictment the previous Friday like he stated to Judge Dougherty that he would. Instead, he came up with some B.S. about my (45) days did not start until 16th day after my arraignment, which is a lie. He did not present any case law and or cpl subdivision for the defense to cross reference and Judge Dougherty agreed with him. Let me remind the higher court, we were not even there for that, it was for a bail reduction and bail reduction was never discussed. The bail was left the same to keep the defendant incarcerated, while they tried again the following week to get an indictment. This is why plaintiff states that judge Dougherty is not fair or impartial and is acting like an A.D.A., which he used to be.

32. On January 15, 2020, at Onondaga County Court, Judge Stephen J. Dougherty denied plaintiff's motion of 190.80 after plaintiff was incarcerated for more than (45) days without an indictment, in error of the statue. Then he assisted the prosecution who was having problems with an indictment by giving them (18) more days and stated he would address the bail at the next court date; however, he never did.

33. I would like to know, has Judge Dougherty and either A.D.A. in my case, Jarrett Woodfork or Anthony Mangovski, ever worked on a case or assisted one another in prosecuting a case when Judge Dougherty was an Assistant District Attorney. I believe it is a conflict of interest and I believe they are friends, colleagues and comrades. I Could not receive a fair trial or pretrial in his court room. Judges Cuffy and Doran were also ex assistant district attorneys. Out of the (4) Judges in Onondaga County Court, (3) were assistant district attorneys and (2); Dougherty and Duran are not impartial or fair. I do not know how fair or impartial Judge Cuffy or Judge Miller will be, however, I am hearing from inmates that the Supreme Court Justice Hon. Gordon J. Cuffy is not following the New York State Bail Reform Law' and is not setting (3) types of bail. I was incarcerated with (56) inmates on my floor and some were stating all of their motions were denied or sometimes just straight ignored. I had (5) defendants that stated they were not given a fair trial or pretrial detention. It is said throughout the jail that District Attorney William J. Fitzpatrick help the judges win their judgeships and this is why Judges Dougherty and Doran act as Assistant District Attorneys, what they used to be under District Attorney William J. Fitzpatrick (who is still District Attorney).

34. On January 21, 2020, at the Onondaga District Attorney's Office, A.D.A. Mangovski violated plaintiff's Civil Rights and Criminal Procedure Law when he convened an all-white Grand Jury and the plaintiff is black. He also withheld evidence. Assistant District Attorney Mangovski would not let plaintiff present evidence (photos/text messages/police statements) to Grand Jurors but chose to keep plaintiff quiet, however, he did show an edited video, with parts missing that Syracuse Police Officers seen in their statements, as well as myself.

35. On January 14, 2020, at the Onondaga County District Attorney's Office, the day before the Grand Jury was convened, defense attorney Stephen Lance Cimino, served the People, in person, a list of (2) witnesses the Petitioner planned to call and what their testimonies would be. Both intended witnesses being Syracuse Police Officers, Kimberly Dishaw and Dallas Pelz. However, A.D.A. Mangovski used unethical practices and asked the Grand Jurors to vote on whether or not they wanted to hear from Officer Dishaw and minimized her involvement at the scene. Never once told them her testimony would reflect the fact that she recovered weapons and a black firearm holster from complainant at hospital. Her testimony was crucial to the offenses charged and would have established a clear defense of justification. Jurors may have come back with a 'no

8

bill' had they heard from said witness. The Prosecution's failure to call Syracuse Police Officer Kimberly Dishaw required and requires dismissal of the indictment with prejudice. Ms. Dishaw works (1) building over and was readily available.

36. As a result, this came out 2 ½ years later and (3) weeks before trial, at the Onondaga County Courthouse, A.D.A. Mangovski was removed from the case and replaced with a new A.D.A. by the name of Alphonse Williams. His tactics were the same, if not worse, and very prejudicial to Petitioner. An example of this, when the trial jury asked for evidence of physical injuries, A.D.A. Williams sent to the jury room, and the Judge allowed, a picture of Donnell Thornton, who was neither a witness nor complainant in this case, pictures of blood on the ground and a shell casing from the gun that fired the most shots. None of which were what the Jurors asked for and were prejudicial. A.D.A. Williams also fixed evidence to support Complainant's ever evolving story by sending Investigators to take pictures of a hole (3) years after the incident with no proof if this hole existed at the time of the incident or was even the hole complainant says he fell in. After complainant, Arthur Stripling, changed his testimony in the Grand Jury, that differed from his (2) previous statements to police which he refused to sign, Petitioner was indicted on a (5) count indictment: Attempted Murder 2nd, Criminal Use of a Weapon 1st, Assault 1st, Criminal Possession of a Weapon 1st and Criminal Possession of a Weapon 2nd. It should be noted that Petitioner was only charged in the information with (3) charges and the notice of the Grand Jury proceeding stated that (3) charges would be presented at Grand Jury. Petitioner was over indicted based on lies told by complainant to ensure some type of conviction. The top (4) counts of the indictment, Petitioner was later acquitted of.

37. On January 21, 2020, at the Onondaga County District Attorney's Office, A.D.A. Mangovski did not let plaintiff present evidence at the Grand Jury when he testified on his own behalf. Mr. Mangovski would not let me present pictures, text messages between myself and pub owner Tammy McNeilly, statements from the Syracuse Police Officers that viewed the surveillance footage and recovered weapons. I also believe that Syracuse Police Officers Dallas Pelz and Kimberly Dishaw did not testify because it would have blown the whole case, their testimonies were crucial and important.

38. On January 24, 2020, at Onondaga County Court, at plaintiff's 4th or 5th appearance for bail, Judge Stephen J. Dougherty again failed to address plaintiff's detention status but adjourned bail hearing to give prosecutor more time to reach an indictment, acting as an A.D.A., which he used to be and is a serious conflict of interest to every defendant brought before him. He is not impartial.

39. On February 4, 2020, at Onondaga County Court, at the last bail hearing Judge Stephen J. Dougherty acted and always has, like an assistant district attorney. Never once

addressing plaintiff's bail status, the only reason plaintiff was in Judge Dougherty's courtroom, holding plaintiff until indictment well after the time allowed has expired.

40. On February 4, 2020, at the Onondaga County Courthouse, while at another bail hearing in front of Stephen J. Dougherty, Assistant District Attorney Anthony V. Mangovski stood up and he admitted in open court that he did, in fact, erase the DVD and has violated the law. Again, bail was never addressed by Judge Stephen J. Dougherty.

41. It had been (41) days since the new bail law had gone into effect, however, I was still being held on a ransom bail. I should, in fact, have had (3) different bails. A cash bail, insurance bond bail and an unsecured bail. This was in violation of the New York State Bail Reform Law.

42. On February 4, 2020, in the Onondaga County Courthouse, at the last and 4th bail hearing, I interrupted Judge Stephen J. Dougherty and told A.D.A. Mangovski to tell the Judge how he erased the tape, referring to the surveillance recording. Mr. Mangovski stood up in open court and stated, "Yes, Your Honor, I erased the tape." Now this admission is on the record and anything you state in court can and will be used against you and this is why there are procedural safeguards from defendants speaking out in court without an attorney present. Now down the road in the State and Federal Civil Trial he may try and say he was playing or being a smartass. However, an admission of guilt in open court is an admission and should be taken as that and nothing less. Especially when someone is being accused of committing a crime and his life is on the line! He openly and voluntarily admitted it and attorney, Stephen Lance Cimino, is and will be my witness at trial.

43. In a meeting at the Onondaga County Justice Center with my attorney, Stephen Lance Cimino, he said to me that this case reminded him of when an investigator from the Onondaga County District Attorney's Office hit and killed a (7) year old boy after being out all-night drinking. I told Mr. Cimino I was familiar with that case. He then went on to tell me how a fire chief had erased the tape from the bar the investigator was drinking at to save the investigator. He also told me that the fire chief was acting on orders from someone in the District Attorney's Office who was in a high place and was also intimate and lovers with the male investigator. He also stated that the fire chief was fired as a result of his actions but has since been given his job back?! Mr. Cimino would not say who the higher up male was but people know. I hope A.D.A. Mangovski is fired for his actions and never allowed to practice law in New York State or any other state.

44. On or about January 15, 2020, at the Onondaga County Courthouse, Syracuse Police Officer Dallas Pelz lied in the Grand Jury proceeding about seeing anyone else with a gun on video. However, on or about September 26, 2022, at the trial stated 'I seen Donnell

Thornton pointing a gun in the direction complainant was seen coming from when complainant was shot'. It is believed and backed up by evidence that Donnell Thornton shot complainant Arthur Stripling while running towards him. Officer Pelz also read a text message in front of the Grand Jury between himself and Plaintiff concerning a pending indictment in another case, which was highly prejudicial. During Officer Pelz's trial testimony he stated that he found a picture of Plaintiff in a database of people with prior arrests which was very prejudicial towards the Plaintiff.

45. On September 13, 2022, at the Onondaga County Courthouse, it was brought to our attention (1) day before a trial, after (3) years, that Mr. Thornton would be given full immunity for shooting complainant, Arthur stripling, immunity for strangulation, obstruction of breathing, blocking someone from making a 911 call, burglary 2nd, criminal contempt 1st, possession of a weapon and criminal use of a firearm, from being on camera firing a weapon. All of these charges happened at the time Mr. Thornton was on and is still on life parole. For (3) years we were told that Mr. Thorton was not a part of this case and him testifying with an immunity deal was never mentioned. Plaintiff was never identified as a shooter by any witnesses who testified and when asked if any of the (3) witnesses saw a Plaintiff with a gun that night, they all testified that they did not. So, we have a career criminal on life parole firing a gun on video, burglary and strangulation (just to name a few) given immunity and Plaintiff is convicted of Criminal Possession of a Weapon 2nd. There is no gun, no DNA and no witnesses.

46. The destruction/erasure of the surveillance video that Syracuse Police Officer Pelz viewed on November 4, 2019, at McNielly's Pub and gave a sworn statement about Mr. Thorton firing a weapon, magically disappeared. However, it was shown to the Grand Jury with hours missing, more specifically Mr. Thorton firing the black handgun was missing. It should have never been shown to the Grand Jury with parts missing if it could not be viewed in its entirety. These lies to the Grand Jury and erasure/destruction of crucial Brady material required dismissal of the indictment with prejudice.

47. On September 14, 2022, at Onondaga Courthouse, Before the start of the trial, Hon. Rory A. McMahon offered Plaintiff a sentence of (10) years in confinement. After it was pointed out to Judge McMahon that Plaintiff was not a predicate felon, the Judge said it didn't matter and that (10) years was the offer regardless. Giving no weight to Plaintiff's criminal record, or lack thereof, showing that he had formed an opinion about guilt, rather than innocence and could not be impartial.

48. September 15, 2022, during Jury selection at the Onondaga County Courthouse, during the 1st trial a sworn Juror became ill during voir dire and was discharged. Honorable Rory A. McMahon gave the Prosecution an extra peremptory strike for the sick Juror. That made a total of (16) peremptory strikes given and used by the Prosecution for jury

11

selection, whereas Defense had (15) strikes as prescribed by Law. This created a chaotic scene in the court room and I will explain why. First Chief Assistant District Attorney Joseph T. Coolican and another Senior Assistant District Attorney came down on the lunch break because ADA Alphonse Williams reported on break to 'his handlers' as he put it that he was given an extra peremptory strike and he did in fact use it during jury selection. Chief A.D.A. Coolican informed Judge McMahon of his wrong doing and that the People could not move forward or the Plaintiff would be entitled to a full acquittal, not just a reversal of a conviction. Honorable Rory A. McMahon still did not want to declare a mistrial. So now you have the (2) Senior A.D.A.s standing at the bench, Plaintiff's Attorney Honorable Paul G. Carey was standing up in the court room along with A.D.A. Alphonse Williams, making the atmosphere uneasy. This is when it became chaotic and Judge McMahon tried to shift his wrong doings to the Plaintiff and his Attorney, like we gave the A.D.A. the extra peremptory strike. The Judge did not call a mistrial until a Court Clerk said that they could take the jury pool from the other (2) trials that were to start the following Monday. Only then did the Judge order a mistrial, otherwise he totally would have ignored First Chief A.D.A. Coolican's finding of fact from upstairs in the District Attorney's office.

49. On September 15, 2022, at the Onondaga County Courthouse, Honorable Rory A. McMahon became personally involved in this case, formed an opinion as to the Plaintiff's guilt rather than his innocence. He became upset that the Defense Attorney and the Plaintiff did not take the blame for his actions. After this His Honor began to let all kinds of exhibits into evidence that were very prejudicial to the Plaintiff. Evidence that could not be tied to the Plaintiff or the complainant. Judge McMahon even let exhibits into the deliberation room that, in fact, had not been tested for DNA to see whose blood it was. These actions by the presiding Judge gave the Prosecution an advantage showing he was not fair or impartial. I think my attorney called it Robe Fever, when the Law is totally ignored by a new Judge.

50. On or about September 19th- 28th, 2022, at the Onondaga County Courthouse, District Attorney Investigators Quattrone and Brennen sat in on much of the trial. Later in the trial Investigator Brennen himself became a witness, testifying for the Prosecution. This was after sitting in on testimony from complainant, Arthur Stripling, regarding the previously mentioned hole. Investigators then went and found a hole in the ground (3) years after the incident and without complainant's verification with Investigator Brennen testifying to match up with complainant's testimony. Judge McMahon allowed this to happen.

51. On or about September 19, 2022, at the Onondaga County Courthouse, we began picking a new jury and the next trial started. During the trial, complainant testified that he attempted to extort $10,000 from the Plaintiff and said he would not have testified

12

at trial had he received his money, that he instead would get street justice. Plaintiff refused to pay because he was innocent. The funds were available, however, complainant Arthur Stripling, was not paid off. Judge McMahon advised Mr. Stripling that he had just admitted to a felony and he assigned him an attorney by the name of Eric Greske, who was present in the court room.

52. Again, on or about September 19, 2022, at the Onondaga County Courthouse, the Judge nor Prosecutor charged Mr. Stripling with any crimes. These guys can fire guns, possess weapons, lie under oath and strangle their wife but not be charged? When you look at all of their crimes and charges, the Plaintiff does not compare to the crimes these men have committed and therefore you wonder who really should have been on trial. Again, the Plaintiff does not mean to be repetitive, however, he has been convicted of possessing a gun that is not and never was present. There is no DNA, witness, latent prints or any weapon tied to the Plaintiff. This verdict was forced on the jury to reach and I will get into this on the next paragraph. Where is the Plaintiff's Equal Protection under the Laws?

53. On Tuesday, September 27, 2022, at the Onondaga County Courthouse, the Prosecutor asked the Judge could they use a verbal statement that was not sworn, made by the Petitioner to acting Supreme Court Justice Gordon J. Cuffy at the Plaintiff's arraignment. This is how he was convicted, from the statement alone. This was hearsay and should never have been allowed.

54. On or about September 27, 2022, at the Onondaga County Courthouse, A.D.A. Alphonse Williams stated that he would just have any stenographer read this off of the transcript because the original stenographer had retired. Defense Attorney Paul G. Carey objected under the hearsay rule and Judge McMahon overruled his objection. This is how I know the Judge was biased against the Plaintiff. He had them call this lady who was retired, sick, taking a trip to the doctor and lives all the way in Cleveland, New York. She stated that she could not be present in court for three hours so Judge McMahon shut down Court for (3) hours until she could make it in to provide hearsay testimony or what she thought she heard the Plaintiff say 2 ½ years ago. This action was not impartial but bias against Plaintiff because Judge McMahon knew the People had lost their case and he had been on their side the whole time. Never acting like a referee but as though he was the Prosecutor. Please look at all of the rights guaranteed to the Plaintiff being violated. Please see paragraphs (8) through (14), which are all Judge McMahon's unconstitutional violations of Plaintiff's rights. There is more to come and it is sad and hurtful, however, Plaintiff will proceed.

55. After the stenographer testified the People rested their case. Plaintiff did not take the stand and the Defense also rested their case. Within 2 ½ hours Jurors reached a verdict on the top (4) counts: Attempted Murder 2nd - Not Guilty, Criminal Use of a Firearm 1st

13

- Not Guilty, Assault 1st - Not Guilty, Criminal Possession of a Firearm 1st - Not Guilty. Criminal Possession of a Weapon 2nd – the Jurors informed the Court they were Deadlocked several times by notes.

56. On September 27, 2022, at the Onondaga County Courthouse, Hon. Rory A. McMahon gave the Jury an instruction to go back in and deliberate, so they did. The Jurors sent a note out again, saying they were not able to reach a verdict. The Judge kept the courthouse open until 6 PM and they still could not reach a verdict on the last count, so we all went home for the night. It should be noted that there were (2) other trials taking place, one was a 1st degree murder trial in front of Judge Miller and the other was a 1st degree rape of a minor in front of Judge Cuffy. These (2) cases are more important than the Plaintiff's, however, both Judges dismissed their Jurors respectfully at 4:15 PM because the building closed at 4:30 PM. The court officers were upset because they wanted to go home, Jurors were tired and the building was closed.

57. On September 28, 2022, the Jury, Plaintiff and all parties involved returned to the court. The Jurors went back to deliberate again and after hours of deliberation they sent out another note that read, "we have deliberated last night for hours and all day today and we still are unable to reach a verdict". After review of the note, Judge McMahon brings the jury out to give them instruction again to reach a verdict. Now it was reaching 4:30 PM on the second day of the deliberations and the Courthouse was closing. So, Hon. McMahon decides to keep a tired, dead locked jury and said he was keeping the courthouse open again until 6 PM, giving court staff forced overtime.

58. On September 28, 2022, the Jurors went back to deliberating and sent out a note and this is how I know I was convicted off of hearsay. A verbal statement that was not sworn in, only what a stenographer is alleged to have heard the plaintiff say 2 ½ years ago. The Jurors asked (2) questions, what is reasonable doubt and what is the purpose of an arraignment. At this time Judge McMahon asked the Prosecutor what did he want to do and he told the Judge, "It is clear that they are deadlocked and could not reach a verdict." A.D.A. Williams went on to say that at this time the People would accept a partial verdict, they would except the verdict for the (4) counts they reached a verdict on and the deadlock for the 5th count, Defense attorney agreed. At this time the Judge should have either declared a mistrial or excepted the partial verdict that both parties were in agreement with. Judge McMahon had become personally involved in this case and made them keep deliberating.

59. On September 28, 2022, at the Onondaga County Courthouse, I am not a betting man; however, I strongly feel Judge McMahon knew what the verdict was on the top (4) counts and this forced him to force the jury to reach a verdict on the 5th count. The jury

14

notes were alarming and would alert an impartial Judge that they were deadlocked but His Honor had already formed an opinion on guilt rather than innocence and became personally involved. There were so many irreversible errors that occurred, how could the Plaintiff ever had received a fair or impartial trial when the whole District Attorney's Office was helping A.D.A. Alphonse Williams and the Judge is against you? I feel let down by the Judicial system in the 500 block of S. State St. When did everybody become un-honorable and choose not to follow the Law and send an innocent man to jail with a conviction that the Jurors were forced to make? Excuse me, Your Honor, for getting outside the scope of this complaint, permission to carry on….. I do not know the Amendment #, however, I will recite what I remember when I was first introduced into Constitutional Law: No man, woman, child or citizen of the United States shall ever be compelled to be a witness against himself in any criminal proceeding. Also, no statement a defendant makes cannot be used against him if there is not any other corroborating evidence.

60. I confided in a Supreme Court Justice because I wanted to be honest and I believed in the Judicial System. I was an employee (security, who wore security shirts) at the establishment where these men tried to kill me. The Jury believed me but was forced to reach a verdict on a count that was not and could not be an element of the crimes alleged without finding him guilty of (1) of the top counts or, in the alternative at least have a weapon that is tied to the defendant by a witness. There is no weapon, no witness but more than that, there was no crime committed.

61. Plaintiff further argues that he was arrested on November 25, 2019, where he remained in custody for (10) months and (1) week before his family was able to raise $150,000 bond, bond that is not returned. Plaintiff was bailed out on October 3, 2020 and remained on bond for (2) years. His original trial date was set for March 29, 2022 and was adjourned until September 14, 2022 because the People were not ready to proceed. Not one time did the Defense or the Plaintiff cause a delay. One might argue COVID-19, however, there were trials going on while Plaintiff was incarcerated. The Law states that the People had (180) days to try Plaintiff on a charge of a felonious nature. The Plaintiff was home on bail for (2) years without so much as a traffic citation and in total it was (144) weeks, almost (3) years before the trial occurred.

62. In the George Floyd and Kyle Rittenhouse cases, their Judges under Federal and State statue said these men had to be tried immediately or within (8) months and they were even though the COVID-19 outbreak had just started, not (3) years to take them to trial like the Plaintiff in this case. It should be noted that the Plaintiff was arrested before the officer in the George Floyd trial and Plaintiff was also arrested before Kyle Rittenhouse and both of their trials happened before the Plaintiff's did.

15

63. Plaintiff understands this was supposed to be 'brief' and you are not supposed to site case law, therefore he did not. Had the Plaintiff sited all the case law he has acquired, then it would be (5) more pages and Plaintiff does not and did not intend to bore the Court. However, after all of these atrocities that have happened to the Plaintiff, it was only right to list them all. Plaintiff has not committed a felony in (20) years or a misdemeanor in (14) years, owns three businesses, pays taxes and this can all be verified through the Onondaga County Clerk's Office.

64. On or about September 23rd or 26th, 2022, at the Onondaga County Courthouse, Complainant, Arthur Stripling, not only admitted to extortion while testifying during the trial but he twice committed perjury. The 1st statement he gave to the police differed from the 2nd statement he gave to the police. The Grand Jury testimony differed from both of the prior statements and his trial testimony differed from all (3) prior versions of events.

65. On or about September 23rd, 2022, at the Onondaga County Courthouse, witness, Tonya Burton, perjured herself, changing her Grand Jury testimony to a completely different story then what she told police on the night in question. She then perjured herself again at trial with an even more elaborate story than her original statement to police. On her call to 911, she stated she did not see anything and then after going over her testimony with A.D.A. Alphonse Williams lll, she gave a completely different testimony at trial. She stated the A.D.A. told her what to say.

66. On or about September 26, 2022, at the Onondaga County Courthouse, witness, Tammy McNielly, perjured herself in an attempt to distance herself and her pub from the Plaintiff, at the time of the incident an employee, in lieu of the accusations. Plaintiff had worked at the pub for (3) years, in uniform.

67. On or about September 26, 2022, at the Onondaga County Courthouse, witness, Shasha Thornton, perjured herself by testifying to a drastically different story than she told police and, in an attempt, to protect her husband, Donnell Thornton, who was seen on surveillance video by police firing a gun. On the night of the alleged incident, she stated she did not see anything and the following morning in the hospital with her husband, she was asked did she remember anything and she stated no, she did not.

68. On September 28, 2022, in the Onondaga County Court, the 2nd day of deliberations after the Jury sent notes to Judge McMahon that they could not reach a verdict on the 5th count (petitioner was found not guilty on the top (4) counts of the indictment), Judge McMahon committed a crime and violated the Petitioner's 5th, 6th and 14th Amendment Rights to the United States Constitution. The jury was deadlocked still, so Judge McMahon called for lunch and the bailiff was sent to get the jury. After the bailiff

ushered the jury into their respective seats, the bailiff handed the Judge a note from the jury again. Judge McMahon took the note and slid the note off to the side of the bench, or his desk but I caught him.

69. On October 28, 2022, at the Onondaga County Courthouse, I leaned over to my attorney, Hon. Paul G. Carey (who is a Judge also and Honorable, (315) 427-1222 his cell #) and said, "Sir, the bailiff just gave the Judge a note and he set it aside". What Judge McMahon did next will have him removed from the bench and by his own words later that confirmed what we seen. He told the jury they will be given menus, "you jurors can continue to deliberate through lunch while you eat", ignoring the note!

70. On Wednesday, September 28, 2022, at the Onondaga County Courthouse, the note indicated that they were stuck again and had a legal question, could have been a verdict, could have said they were deadlocked or I am not guilty. A judge was supposed to say to the Courtroom, "We have a note from the jury; however, I will address it when we all return and jurors you cannot discuss the case amongst each other until I address the note, please." He did the opposite. This was an act done on purpose to ensure that the Petitioner did not receive a Fair or Impartial Trial and that Judge McMahon was prejudice towards Petitioner. Judge McMahon already knew I was found not guilty on the (4) top counts and that Judge McMahon was biased against the Defense from the first mistrial when he gave the prosecution an extra peremptory strike (and the prosecutor used it). He also kept the Courthouse open late for days.

71. On October 28, 2022, at the Onondaga County Courthouse, after the lunch break, after Judge McMahon had already reviewed the note, he states out of his own mouth, "the jury had a note handed to me before the break" or something to that effect. I leaned over to my attorney, Mr. Carey and said, "Sir, I told you the bailiff passed him a note" but more than that he was forcing the jury to convict me and should never have sent them back to deliberations without reviewing or addressing the note. What if they had reached a verdict? This was malicious, deceitful and a disgrace to any Man or Woman that wears that Black Robe with Honor. Judge Rory A. McMahon broke the Law and should be removed from the bench for how he presided over Petitioner's trial and the total disrespect to and for the Law! I am sending a copy of my Habeas Corpus Petition to you All and a copy of this petition to the N.Y.S. Bar Association, the N.Y.S. Office of Judicial Misconduct and Hon. James P. Murphy, the Executive Law Judge here in Syracuse, New York who is a part of the 4th Department Court of Appeals.

72. On October 28, 2022, at the Onondaga County Courthouse, this man violated 'Laws' and committed 'Irreversible Error' but more than that, 'Constitutional Error' that cannot be corrected by any Court and he stated it out of his own mouth, "I received a note before the break." He still sent the jury back to deliberate like 'screw your question, convict this

17

man anyway, anyhow'. Again, there is no weapon, no element of a crime, no DNA and no witness who stated they seen me with any weapon, let alone a gun! Criminal possession of a weapon 2nd states clearly, the weapon must be operable and capable of causing serious bodily injury, where is this weapon that never existed? Attempted Murder 2nd – Not Guilty, Criminal Use of a Firearm 1st – Not Guilty, Assault 1st – Not Guilty, Criminal Possession of a Firearm 1st – Not Guilty, Criminal Possession of a Weapon 2nd - Guilty - but how?!

73. It should be noted that His Honor, Judge Rory A. McMahon, practiced arbitration law before he was duly appointed to Supreme Court Justice. Judge McMahon was not experienced enough or had a lack of knowledge to handle a case of this magnitude. Exhibits were let into evidence that should have never been allowed. The court clerk had to give the Judge advice on numerous occasions, such as telling him to get witnesses out of the court room before testifying. In many instances he had to ask Defense Counsel, who is also a Judge, for direction on how to proceed and did not know the Law. It showed in the first trial, that resulted in a mistrial, when he gave the A.D.A. an extra peremptory strike. A Supreme Court Justice that went to law school should have known that that would be prejudicial to the Plaintiff and it made the trial unfair… it is evident.

74. I am writing in regards to incidents that have taken place at the Justice Center on or about May 2020 and October 12, 2020 concerning these same issues and how the Chief Custodian Deputy Esteban B. Gonzalez and (2) Deputies obstructed justice at a federal level on (2) different occasions.

75. On October 13, 2020, at the Onondaga County Justice Center, a 'porter' (inmate janitor) came to my cell and told me to pack up, that I was being moved to another facility. I said, I needed to speak to a Sergeant and that I was not comfortable being moved. One issue was I had a Habeas Corpus petition just filed with the Court and the other was I was not sentenced yet. I stated, "I am not moving, I know what you are trying to do!"

76. On October 13, 2022, at the Onondaga County Justice Center, 1st a Lt. Moore came to my cell and said they were not going to use force, just take my phone, visits, commissary and tablet from my cell. I was on the phone with my common-law wife of (11) years and she heard this from Lt. Moore. Now Lt. Moore left my cell and I still was on a phone call with my wife when in less than (2) minutes Lt. Lavy came to my cell and told me to pack up and I said no, "You are trying to move me so my Habeas Corpus petition is dismissed when the Judge responds and I am not here and they put RTS on the envelope or not at this address. This was Obstruction of Justice at a Federal Level because my petition had already been filed and Chief Deputy Esteban B. Gonzalez received his copy in the morning. He sent his 'Goons' down to remove me either way from this facility to

18

obstruct the Federal Court proceeding and he did this with the previous Habeas Corpus petition I filed. After it was excepted by this Court, and Your Honor did not agree with the Onondaga County Attorney's response and stated that my claims were valid, Your Honor, they obstructed Justice by moving me to another facility but I did not catch it then. My family was able to post the bail and I left my home address, phone number, my common-law wife's name on the last page because I knew they were up to no good. Lt. Moore told me to pack up in 2020 to move and he did this time and if I did not there would be a physical move, by force, if I did not comply (June 2020).

77. Now on October 13, 2022, at the Onondaga County Justice Center, after Lt. Moore left my cell and said there would not be forced used, Lt. Lavy came to my cell and said pack up. I said no, "You are obstructing justice, the Higher Court wants me produced from this facility and if you guys move me my petition will be dismissed. I said you guys are going to have to 'F' me up for this move and Lt. Lavy said ok, we will 'F' you up then and stated he was calling the SERT (Sheriff Emergency Response Team). This is when I said you're going to come in here and kill me because I refuse to move. They mace you and then it be (7) or (8) of them on top of you and you cannot breathe, this is how they killed one inmate. This was witnessed by the mental health worker and Lt. Carsten who stated in front of the mental health worker who was at my door also that he did, in fact, hear Lt. Lavy threaten me. The situation and threats from Lt. Lavy became so intense that they had to remove him from my presence.

78. On October 13, 2022, at the Onondaga County Justice Center, I started having an asthma attack and the nurses had to be called and brought me my asthma pump. I then agreed to be walked upstairs to the mental health unit by a Sgt. and the mental health worker. The Lt.'s were trying to get into my legal work, (2) manila envelopes but I would not let them and said, "please help" to the mental health worker. She said I was safe and she would carry my legal work up to the mental health unit. They walked me down the tier steps and, on my way out, Lt. Lavy with about (7) Deputies started up again. So, I said to Lt. Lavy, "You guys didn't get the chance to 'f' or me up" and they all laughed. This was no laughing matter.

79. On October 13, 2022, at the Onondaga County Justice Center, upon my arrival to the mental health unit, I was placed in a hang proof cell and stripped of my clothes and dignity in front of everyone. I was placed in a cell that had feces and urine all over the floor and walls from the last mentally ill inmate. It was so bad that while I am naked, surrounded by deputies I told Lt. Moore to come here and he came in the cell and told them "Oh yeah, we have to clean this." This is after I had been standing in this urine, with feces everywhere. An inmate came and mopped the floor and I was sent back in there barefoot on a wet floor, the toilet, sink, mattress or walls were not cleaned. It

smelled like urine and feces continuously and still does; the sewer system is backed up completely.

80. On October 14, 2022, at the Onondaga County Justice Center, I was taken out of the 'hell hole' and moved a couple of doors down. Prior to this I was given my clothes back. When I exited the suicide room at 8:30 AM to be moved, guess who is standing outside my cell on the mental health unit? Lt. Lavy and (4) of his 'Goons', waiting for me to say somethings so they could 'F' me up, if not suffocate me to death. This was a whole new day and I was never a problem or I would never have been removed from suicide watch. What I am trying to say, that there were (3) deputies already working the mental health unit and there was no need for the Lt. Lavy and his 'Goons' to be present, only to start a conflict at 8:30 AM because he felt he lost the last confrontation.

81. On October 14th, 15th, 16th, 17th, 18th, 19th, and 20th, 2022, at the Onondaga County Justice Center, I observed inmates who are doing 'box' or 'S.H.U.' time mixed in with mentally ill inmates. There are mentally ill inmates hollering out their doors. They have not seen any social workers or mental health workers for days and they have not had recreation or 'rec' in over a week. I witnessed this and they do not let them out at all and nobody comes to see us. When did it become all right to mix mentally ill inmates in with inmate serving 'box' time for disciplinary reasons? If you are mentally ill you come out from 10 AM - 12 PM and 4 PM - 6 PM if we are lucky. So, if you are on the mental health unit for (6) months, we are locked in for (20) hours a day for (6) to (8) months straight with no misbehavior or incident reports. Just because they have to give them recreation also. This is cruel punishment and against the Law. Open another unit! I've been in this facility for (18) days on reception, coming out of my cell for (1) hour a day and let me just state I only had an issue the last day but prior to this there was no room to move us from reception (that is 10 days for no reason). The jail shut down PODS 3B and 4A because of the Bail Reform Law, now everyone who did not return on their appearance tickets or ROR are back but the facility refuses to open the (2) PODS they closed, because of this we are locked in constantly on the reception floor and the mental health unit. This is after Governor Hochul declared solitary confinement 'cruel and unusual punishment'. However, this facility continues to keep the mentally ill and people with no disciplinary reports locked up in excess of (6) to (8) months, breaking the law. On the next page I will list the violations of our (inmates) Constitutional Rights and Rights Guaranteed to us from New York State Law, as well as Corrections Minimum Standards. Somebody has to come see how the whole facility is locked down and the mentally ill are not receiving psychiatric help and deteriorating in these cells.

82. On October 13th through 19th, 2022, at the Onondaga County Justice Center, inmates are not given grievance forms upon request so my family is mailing this to the New York Grievance Committee. We cannot see all of our families in the visiting times of Tuesday,

20

Wednesday and Thursday from 11 AM to 1 PM. There are over (500) inmates in here and there is no way we can all get the (2) contact visits a week, per correction minimum standards. Then in Onondaga County Correction Facility at Jamesville, the inmates have not had visits in (2) years, (7) months, since March 13, 2019! This is against the Law, if both places are run by the same Sheriff and Deputies, you cannot have visits at (1) facility and not the next. Are they halfway doing visits because the Onondaga County Justice Center is located downtown Syracuse and Human Rights and People are watching? This is where they tried to send me to Obstruct Justice but more than that cut off visitation and contact with the world. I mean, I get it, they are understaffed but you still have to give us visitation, going on (3) years with no visitation is Cruel and Unusual Punishment. If the Sheriff Department cannot house inmates correctly and give them the visitation as prescribed by Law, then give the custody over to the U.S. Marshals Office and Bureau of Prisons.

83. The Onondaga County Justice Center is keeping all inmates locked down, sometimes (23) hours a day! I cannot make this up. There are signs all around the facility, "if you see someone being abused, let somebody know". I am letting the Governor, Attorney General and the Senior District Court Judge know so somebody can help us, please?

84. I am not a Lawyer but I help weak people who are being bullied and do not know any better. I am asking you, Your Honor, to help me by the Law and to know we have been locked in, no visits for (2) years, (7) months because they are short staffed. Not even for disciplinary reasons. This jail is no help, no hope, no honor and they will beat you or kill you by mistake or from too much force.

85. I ask the Governor Hochul to phone the Facility and tell them we all have to get (4) hours of recreation every day and the mentally ill be unlocked all day.

86. I ask that the Senior District Judge release me from this 'Cruel and Unusual Punishment' and send (2) F.B.I. (Fidelity, Bravery, Integrity) Agents to interview me about the Obstruction of Justice that the Deputies I named have committed on (2) different occasions. There is a Habeas Corpus release pending appeal? I am scared for my life, I was home (2) years, no crimes or tickets, my felony conviction is (20) years old and my misdemeanor conviction is (14) years old. I am a small business owner of (3) businesses, I pay taxes in my own name and I have respected the Law. I also made it to every Court appearance for (2) years, Sir. I am not asking for any favors, I am just asking that Your Honor look at my conviction, it is invalid, no weapons never. There is no weapon Sir, the Judge forced the Jurors after they stated in writing, several times that they were deadlocked and what did he do, kept the courthouse open to 6 PM several days in a row.

21

87. Attorney General James, can you please conduct an investigation into the Onondaga County Justice Center and Onondaga County Correctional Facility and how the mentally ill and other inmates are being treated and locked in for weeks. If there is a place to be investigated, this is it! There are numerous laws being broken and inmates ready to give up, however, I am not. Please help us?

88. Sheriff Conway, can you please visit the inside of your (2) facilities and how it is being run. Deputies will jump on you; we are not receiving recreation twice a day and the whole mental health unit smells like urine and feces. The facility has power washer machines for the cells that inmates are laying and walking in urine, feces, with flooded cells, locked away with no hope! Sheriff Eugene J. Conway, you can make a difference. You have the power to order them to re-open the (2) closed PODS so we are not locked in all day on reception for weeks. There is no reason reception is (10) to (15) days, when it is used to be (3) days to read the PPD arm results and when we all took Covid-19 tests in booking before coming up to reception. Visitation needs to be fully reinstated in both facilities, (2) years and (7) months without seeing or touching your loved ones is Cruel and Unusual Punishment. These are county facilities, not the ADX Supermax in Florence, Colorado, Sir. In this facility there are visits (3) days a week for (2) hours a day, there is no way (500) + inmates are receiving their (2) contact visits as prescribed by Law. Covid-19 is done. This is in violation of N.Y.S. Correction Minimum Standards and against the Constitution and Laws of New York State to where it is becoming criminal how we are locked in with no visitation and no misbehavior at all. Just because you are understaffed, this is the United States of America, this facility and the other facility at Jamesville is being run like Guantanamo Bay, Cuba for terrorists. I mean, some of us have not even been convicted of a crime and have been subjected to these forms of punishment for (3) years.

89. On or about the 1st quarter of 2020, at the Onondaga County Justice Center (date was kept a secret and for how long) I was subjected to Hepatitis A , when Napcare providers and Onondaga County Justice Center employees cleared an inmate to work in the inmate kitchen. This inmate tested positive for the virus before he was cleared to work in the meal preparation room. Due to the gross negligence of both county employees and employers, I was placed at risk to contract this non-curable disease I was forced to take a vaccine against my own will or be locked in (medical keep-lock) until I would allow them to put this disease in my body in a form of a vaccine.

90. On October 30, 2020, at the Onondaga County Justice Center Facility, an LPN (Jen or Erin) who works for an Napcare providers broke HIPAA laws when I heard her tell Deputy Schmunk what medication I was receiving. She gave him a rundown out of my pill containers, "ibuprofen, Seroquel, BuSpar" and she only stopped once she realized I was at my cell door, watching her, as she stood off to the side in case I was not decent.

22

What if I was taking HIV or A.I.D.S. medication. It would have been spread all through the facility. Her actions violated HIPAA Laws, facility protocol, and jeopardized the 'good running order' of the facility, and place the plaintiff's life in danger by doing so.

91. I am seeking monetary damages and expungement of charges off of my record for the following: racial discrimination, defamation of character on the news, erasure/destruction of video evidence by prosecutor/police, perjury on the stand by all witnesses at trial, perjury at the grand jury by police, wrongful arrest, wrongful conviction with no basis or element of a crime, perjury in grand jury by witnesses, extortion by complainant, prosecution bribery of witness, failure to prosecute assailants with multiple weapons, my life savings, forcing a deadlocked jury to render a verdict, prosecutorial misconduct, judicial misconduct, violation of my civil rights, 5th, 6th and 14th Amendment Rights to the United States Constitution.

92. My damages are in the manner of $20,000,000 for psychiatric and physical injuries sustained and media humiliation across the country. However, to be decided by a jury of my peers in one of the United States Courthouses for the Northern District of New York.

93. Moreover, plaintiff requests the Court for a change of venue to a neighboring county for a pre-trial and trial, plaintiff does not feel he can receive a fair trial in Onondaga County, as it has been proven twice in (2) separate trials. These are people in high places that have power and influence on the community & government and this is why we filed this complaint in Federal Court. Thank you for Your time and consideration, and Good Day Your Honors.